## GARLAND v. MEYER et al.
### No. 11224.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 16, 1942.

Rehearing Denied March 24, 1943.

532

William E. Remy and Frank M. Rosson, both of San Antonio, for appellant.

G. Woodson Morris, of San Antonio, for appellees.

SMITH, Chief Justice.

On April 6, 1925, Ernst Meyer and Emelie Meyer, husband and wife, each executed the following single instrument:

"State of Texas ⎱ Know All Men By
County of Bexar ⎰ These Presents:

"That we, Ernst Meyer and wife Emelie Meyer, both of the County of Bexar and State of Texas, and residents of the City of San Antonio, realizing the uncertainty of life and certainty of death and being desirous of settling and disposing of all our worldly estate before our decease and while we have the strength and capacity to do so, we hereby make, declare and publish the following to be our last will and testament, same being a joint will, hereby revoking all former wills by us at any time heretofore made.

"First: All property which we or either of own is community property, same being property which we acquired since our marriage and each of us owning a community one-half therein.

"Second: And I, the said Ernst Meyer do hereby will devise and bequeath unto the said Emelie Meyer, my beloved wife, all the property, real, personal and mixed, together with all rights, titles and interest and claims of whatever kind, which I may die seized or possessed of or have any claim, interest to or in, without restriction.

"Third: And I, the said Ernst Meyer, do hereby nominate, constitute, make and appoint the said Emelie Meyer, to be the Independent Executrix of this my last will and testament and of my estate and direct that no bond shall be required of her as such Independent Executrix in any court; and I direct that no proceedings be had in reference to my estate other than the probating of this my last will and testament and the returning of an inventory and appraisement of my estate.

"Fourth: And I, the said Ernst Meyer, do hereby state that it is my wish and desire and I direct that, in case my wife, Emelie Meyer, should die prior to my demise, then

in that event it is my will that all my property, both real, personal and mixed, that I may die seized and possessed of after the payment of all my just debts, shall pass to and vest in fee simple in my beloved daughter, Carrie Meyer. As I bear equal love for my children and as an explanation of why I give and bequeath all my property to my daughter as set out in this paragraph, I now state that I do so because my daughter assists in the management of our home, and my two sons, William Meyer and Fred Meyer, both earn comfortable incomes.

"Fifth: And I, the said Ernst Meyer, do hereby state that it is my wish that in the event my wife should die before my death that Carrie Meyer, my daughter, be appointed Executrix of my estate without bond, and I hereby constitute and appoint in such an event Carrie Meyer as Executrix of my last will and testament and direct that no bond be required of her as said Executrix, and that no action be had in the County Court or administration on my estate, other than to prove and record this will and return an inventory and appraisement of my estate and the list of claims.

"Sixth: And I, the said Emelie Meyer, do hereby will, devise and bequeath unto the said Ernst Meyer, my beloved husband, all the property, real personal and mixed, together with all rights, titles and interest and claims of whatever kind, which I may die seized or possessed of or have any claim or interest in or to without restriction.

"Seventh: And I, the said Emelie Meyer, do hereby nominate, constitute, make and appoint the said Ernst Meyer to be the Independent Executor of this my last will and testament, and of my estate, and direct that no bond shall be required of him as such Independent Executor in any court; and I direct that no proceedings be had in reference to my estate other than the probating of this my last will and testament, and the returning of an Inventory and Appraisement of my estate.

"Eighth: And I, the said Emelie Meyer, do hereby state that it is my wish and desire and I direct that in case my husband, Ernst Meyer, should die prior to my demise, then in that event it is my will that all my property, both real, personal and mixed, that I may die seized and possessed of after the payment of all my just debts, shall pass to and vest in fee simple in my beloved daughter, Carrie Meyer. As I bear equal love for my children and as an explanation of why I give and bequeath all my

property to my daughter as set out in this paragraph, I now state that I do so because my daughter assists in the management of our home and my two sons, William Meyer and Fred Meyer, both earn comfortable incomes.

"Ninth: And I, the said Emelie Meyer, do hereby state that it is my wish that in the event my husband should die before my death that Carrie Meyer, my daughter, be appointed Executrix of my estate without bond, and I hereby constitute and appoint in such event Carrie Meyer as Executrix of my last will and testament and direct that no bond be required of her as said Executrix and that no action be had in the County Court or administration on my estate other than to prove and record this will and return an inventory and appraisement of my estate and list of claims.

"Witness to the foregoing two pages, containing Nine Clauses, we have hereto set our names and subscribed the same in the City of San Antonio, Bexar County, Texas, on this the 6th day of April, A.D.1925, in the presence of French W. Ferguson and C. C. Forister and ————, attesting witnesses, who, in our presence and in the presence of each other, and at our request, sign their names as subscribing witnesses.

"(Signed) Ernst Meyer
"(Signed) Emelie Meyer"

At the time the instrument was executed, and thereafter, their entire estate consisted of their homestead in the City of San Antonio, which was their community property.

The husband, Ernst, died on May 7, 1933, having made no other will than that set out above. His wife, Emelie, survived him and lived until May 29, 1941, when she, too, died without having made any other will.

In the meantime, however, she spitefully sold the homestead for cash, which she thereupon gave to her son Fred, her sole object in making the gift being to prevent her daughter, Carrie, from taking the property under said will. Fred, the son, appropriated said money to his own uses, and, particularly, purchased an automobile, paying $1,050 therefor out of said funds.

After the death of her mother the daughter, Carrie, procured the probate of her mother's will and thereafter brought this action against her brother, Fred, seeking to enforce the provisions therein in her favor as sole remaining legatee; to recover the amount of the proceeds given him by

his mother from the sale of the homestead; to impress a trust upon said automobile and an equitable lien thereon in the amount paid for it; and for other relief not necessary to set out here.

Upon a jury trial the court below rendered judgment that the plaintiff, Carrie Meyer Garland, recover nothing from defendant, Fred Meyer. The parties will be designated as plaintiff and defendant, respectively, as in the trial court.

The jury found in response to special issues that defendant did not receive and hold the proceeds from the sale of the estate in trust for Emelie Meyer or her estate, but that he received said proceeds as a gift from Emelie Meyer; that said gift was not fraudulently made to defendant for the purpose of preventing it from going to plaintiff under the will in evidence, but that Emelie Meyer did give said proceeds to defendant "for the express and deliberate purpose and desire to prevent the same from going to plaintiff by the will in evidence."

Two months after Emelie's death said instrument was admitted to probate as her will, at the instance of her daughter, Carrie Meyer Garland, plaintiff herein, who had been designated in said instrument to take the estate of each testator in the specified contingencies and administer the same as independent executrix. It was recited in the application of Carrie Meyer Garland for the probate of said will, and it is true, that her father, Ernst Meyer, died possessed of his community interest in the homestead property owned by Ernst and Emelie Meyer at the time they executed their wills and at the time of Ernst's death, as well as at the time Emelie procured the probate of Ernst's will.

■ Both parties invoke a decision of the question of whether the instrument involved here was a joint will of both testators, or separate wills of each. Joint or mutual or reciprocal wills have been written about by the courts for a long time, without any very clear result, or definition. For a long time the courts of England and of this country denied the validity of joint wills, as such, and refused to admit them to probate, and although in later times they have been given effect in rare cases and under particular provisions amounting to enforcible contracts, the courts have frowned upon them as cumbrous and impossible, or at least impracticable of enforcement. In nearly all cases it has been held that such a will may be revoked by the survivor of the testators, at any time before his death. Annotation IV, 43 A.L.R. 1025; Annotation IV, 60 A.L.R. 628; Wyche v. Clapp, 43 Tex. 543; Aniol v. Aniol, 127 Tex. 576, 94 S.W.2d 425. This right of revocation cannot be defeated except in cases of mutual wills made in accordance with specific contract to devise or bequeath, which element is totally absent from this case.

■ The instrument in question was not a joint will of Ernst and Emelie Meyer, but it merely embraced the separate will of each. The fact that the two wills were encompassed within one instrument is within itself ineffectual to establish the character of that instrument as a joint will or contract, nor does the mere designation of it by the parties as a joint will make it such in law or fact, for its character must be determined alone by its terms. The will of each maker was separately expressed, was complete within itself and separable from, without disarranging or dislocating the terms of, the other. Aniol v. Aniol, Tex. Civ.App., 62 S.W.2d 668; Id., 127 Tex. 576, 94 S.W.2d 425; Winston v. Griffith, Tex.Civ.App., 108 S.W.2d 745; Id., 133 Tex. 348, 128 S.W.2d 25; Beveridge v. Bailey, 53 S.D. 98, 220 N.W. 462, 60 A.L.R. 619; In re Cawley's Estate, 136 Pa. 628, 20 A. 567, 10 L.R.A. 93.

■ Moreover, the will of Ernst Meyer, embraced in the instrument in question, was admitted to probate as his separate will, and that proceeding in probate was an adjudication of the fact that it was his separate will. That adjudication cannot be questioned in this collateral proceeding. Winston v. Griffith, 133 Tex. 348, 128 S.W.2d 25. We will therefore consider the instrument in question as the separate wills of Ernst Meyer and his wife, Emelie, which could be revoked or ignored by either during his or her lifetime, respectively.

By the terms of the will it was provided in the first devise thereof: "Second: And I, the said Ernst Meyer do hereby will devise and bequeath unto the said Emelie Meyer, my beloved wife, all the property, real, personal and mixed, together with all rights, titles and interest and claims of whatever kind, which I may die

seized or possessed of or have any claim, interest to or in, without restriction."

In the next paragraph the testator appointed his wife independent executrix under his will and upon probate of the instrument she qualified and administered in virtue of that appointment.

■ It is obvious that under paragraph 3, set out above, the surviving wife, Emelie, took in absolute fee the whole of the testator's half interest in the community estate at the death of the testator and at the probate of his separate will, and since she already owned the other half in community, the devise made her the owner of the whole of that estate to dispose of as she pleased, either by alienation of all or any part of it during her life or by devise of the remainder, if any, at her death. It so transpired that she alienated all of it during her lifetime, thereby exhausing it, so that nothing remained to be devised.

It is true that in subsequent paragraphs of his will Ernst provided that in event his wife predeceased him his daughter, Carrie, should take all his estate, and administer thereon as independent executrix, but since the prescribed contingency did not happen, that bequest failed, and the daughter never acquired any interest in any part of the estate.

But the daughter, Carrie, insists and rests her appeal on the contention that this was a joint will and her mother, Emelie, was accordingly bound by the provisions of the will that in event her husband predeceased her, her daughter, Carrie, should take her estate and administer thereon as independent executrix. But, as has been shown, this was not a joint will, and, moreover, in any event, was revocable by the testatrix, who was not bound thereby as upon a contractual obligation. In her lifetime she could revoke either by formal declaration, or by exhaustion of the subject matter. She did exhaust the subject matter by selling it during her lifetime, and giving the proceeds of the sale to her son the defendant in this case, who invested the funds so acquired in an automobile. Emelie was not bound under the instrument relied on by plaintiff to hold the estate throughout her life and transmit it at her death to plaintiff, Carrie. This would be so even under a joint will couched in the terms of that instrument. Wyche v. Clapp, supra; Winston v. Griffith, supra.

■ Plaintiff contends that because Emelie Meyer spitefully sold the estate and gave the proceeds of the sale to defendant in order to prevent the property from going to plaintiff under the will in question, a trust in favor of plaintiff was thereby impressed upon the proceeds from the sale of the property, and equity would enforce a lien upon property purchased by defendant with those proceeds, in this case an automobile. The contention is without merit, even though the instrument in question were a joint will, as contended by plaintiff. Wyche v. Clapp, supra. It was said in the case cited that "it has been held in no case which has come under our observation, and could not in sound principle be so held, as we think, that the mere execution of an instrument in the form of a joint will can be given by construction the effect of a contract or agreement to make mutual wills which will authorize a court of equity to fasten a trust upon the estate of the defaulting party, * * *."

The admitted fact that Emelie Meyer sold the assets of the estate and gave the proceeds to her son Fred, the defendant, for the sole spiteful purpose of preventing her daughter, the plaintiff, from taking the property under her mother's will, is not material here. Motive for such action is no stronger than a moral obligation, as distinguished from a legal. The estate was the property of Emelie Meyer, to do with as she pleased, and if she chose to dispose of it in her lifetime merely to spite her daughter that ugly spirit did not impair the legality of her act.

■ But, lastly, plaintiff contends that because Emelie Meyer caused the will of her deceased husband, Ernst, to be admitted to probate and elected to and did accept the benefits thereof, she was estopped to oppose the provision of that will that in the contingency that Emelie predeceased him his daughter should take his estate. This contention is without merit for two reasons, first, the stated contingency did not happen, and, second, in any event she was not in Ernst's will put to an election, but had the right to remain in possession of the property as her homestead and as part owner, without creating any estoppel to do with the property as her own and without restraint. Aniol v. Aniol, supra.

The trial court correctly disposed of the case and the judgment is affirmed.